UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 24 C 7758 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| THE PARTNERSHIPS AND | ) |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SECHEDULE "A", | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Jianhua Huang ("JH") sued 131 entities listed in Schedule A to her complaint for infringing her federally registered copyright of fruits and vegetables holding placards by selling products on e-commerce stores that incorporate her copyright. The Court granted JH's motion for a temporary restraining order ("TRO") on September 10, 2024, Doc. 18, and entered a preliminary injunction order on September 25, 2024, Doc. 27. Some Defendants did not answer or appear, and so the Court entered a partial default judgment order. Doc. 80. Other Defendants have contested the case, including Defendant Vshinic, which now moves to dismiss JH's claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 110. Vshinic also moves to vacate the preliminary injunction. Doc. 114. The Court denies Vshinic's motion to dismiss because JH sufficiently alleges access, and the Court finds it more appropriate to leave the question of the validity of JH's copyright registration for a later stage. And because the Court finds that JH has shown the elements necessary for equitable relief, the Court denies Vshinic's motion to vacate the preliminary injunction.

## BACKGROUND[1]

JH creates art featuring fruits and vegetables with a humorous and comforting twist. Around March 2021, JH sketched a line of characters featuring a cucumber, tomato, and potato holding signs with positive messages:



Doc. 124 at 2. She explored potential production using silicone, rubber, or latex materials with some factories in China, but she decided against it due to costs and risks associated with the COVID-19 pandemic. During these discussions, JH shared her drawings with factory personnel without signing any confidentiality agreements.

More recently, crochet elements became trendy, and JH discovered multiple e-commerce stores selling crochet cucumber, tomato, and potato dolls incorporating JH's design elements. Though JH admits that she does not know how each seller accessed her design, she thinks the

---

[1] The Court takes the facts in the background section from JH's complaint and exhibits attached thereto and presumes them to be true for the purposes of resolving Vshinic's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Where appropriate, the Court considers facts from outside the complaint. *See Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("[A] court may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim."); *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) ("The party defending the adequacy of a complaint may point to facts in a brief or affidavit 'in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle h[er] to judgment.'").

factories with which she previously discussed production leaked or stole her drawings. Many factories and manufacturers maintain their own websites from which e-commerce sellers can buy products in bulk to then sell online themselves.

After realizing that others were misappropriating her design without her knowledge, JH registered her works with the U.S. Copyright Office in 2024. She is now the registered owner of a federal copyright, Registration No. VAu 1-529-626, that protects the creative content of her illustrations. JH, however, has delayed developing her designs into high-quality marketable products because of the infringing sellers.

Vshinic is one of 131 e-commerce stores that JH has identified as infringing on her copyright. Vshinic operates an Amazon e-commerce store where it sells a "positive potato" toy, which closely resembles JH's potato drawing.



Doc. 124 at 3. Vshinic admits that since August 2023, it has procured its positive potato toy from a manufacturer in China, which represented that it sold authentic toys with its proprietary copyrights. Doc. 111 at 5–6.

3

ANALYSIS

I.     **Sufficiency of the Allegations**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"A plaintiff alleging copyright infringement must establish two elements: '(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Vshinic challenges both elements, and the Court considers its arguments in the order presented in Vshinic's brief.

    A.     **Copying**

Where there is no direct evidence of copying, such as a defendant's admission, the Court may infer copying from allegations that a defendant had an opportunity to copy the original, referred to as "access," and that the works in question are "substantially similar" to each other, or, in other words, "that the two works share enough unique features to give rise to a breach of

4

the duty not to copy another's work." *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012). "[A]lthough proof of striking similarity may permit an inference of access, the plaintiff must still meet some minimum threshold of proof which demonstrates that the inference of access is reasonable." *Selle v. Gibb*, 741 F.2d 896, 902 (7th Cir. 1984); *see also Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997) (noting that "similarity that is so close as to be highly unlikely to have been an accident of independent creation is evidence of access").

Vshinic argues that JH does not sufficiently allege access. Specifically, Vshinic first points to JH's copyright registration, which designates her works as "unpublished," *see* Doc. 111-4 at 6, to assert that any alleged access is speculative because this designation amounts to JH's "admission that [her] works were kept 'under lock and key.'" Doc. 111 at 7. Vshinic next dismisses JH's allegation that all Defendants had access to her works via the internet, *see* Doc. 1 ¶ 27, as insufficient because the mere existence of a website cannot justify an inference of Vshinic's access, citing *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017). The Court addresses each argument in turn.

While JH's copyright registration lists her works as "unpublished," the Court considers this designation irrelevant to Vshinic's access argument. The Register of Copyrights has counseled that, "[a]lthough it is not expressly stated in the statutory definition, the legislative history indicates that publication occurs only when copies or phonorecords are distributed by or with the authority of the copyright owner," *Compendium of the U.S. Copyright Office Practices* § 1902 (3d ed.). Therefore, being "unpublished" does not equate with being inaccessible. An "unpublished" work may still have been accessible if others distributed the work without the authority of the copyright owner. Here, although JH did not publish her works, she alleges that she showed her drawings to factories that subsequently leaked or stole them. This allegation

5

demonstrates that, even if JH did not publish the drawings herself, Vshinic may still have had access.

Second, contrary to Vshinic's argument, JH's allegation that all Defendants had access to her works on the internet does not complete the story. JH, in her complaint and the declaration attached to her response brief, alleges that (1) she shared her designs with factory personnel in China when considering production of her works, (2) these factory personnel stole her designs, (3) many factories and manufacturers maintain websites from which e-commerce sellers can buy products, and (4) Vshinic accessed her design on the internet. Also, Vshinic admits to obtaining the potato toys from a manufacturer in China. JH's allegations and Vshinic's admission, taken together, surpass speculation and suggest more than just "the existence of the plaintiff's copyrighted materials on the internet, even on a public and 'user-friendly' site." *Design Basics*, 858 F.3d at 1108. And, to strengthen support of any circumstantial evidence of alleged access, the Court also may consider "proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle*, 741 F.2d at 901. Vshinic does not dispute the works' striking similarity, likely because the two potatoes are nearly identical. At this stage, JH's allegations of access and the works' striking similarity suffice to survive dismissal.

### B. Validity

Vshinic also challenges the validity of JH's copyright. Because JH alleges that Defendants had access to her works via the internet, Vshinic argues that JH's copyright registration is invalid based upon her misrepresentation of the works as "unpublished" in connection with that registration. JH responds by stating that unauthorized publication does not

6

constitute publication under the Copyright Act. She further asserts that the Court should postpone considering the validity of her copyright until the parties more fully develop the record.

A copyright registration "constitutes *prima facie* evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994). Thus, at the motion to dismiss stage, the Court accepts JH's allegations that she has obtained a valid copyright for her potato drawing and leaves the question of the validity of the copyright for a more developed record. *See Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 422–23 (7th Cir. 1993) (determining validity of a copyright "at the pleading stage will often be impossible" and is "more properly addressed at the summary judgment stage"); *Nextpulse, LLC v. Life Fitness, LLC*, No. 22 C 3239, 2024 WL 1376213, at *4 (N.D. Ill. Mar. 31, 2024) ("To the extent that Life Fitness seeks to rebut the prima facie evidence of ownership established by Nextpulse's certificates of registration, rebuttal is inappropriate at the motion to dismiss stage.").

Although 17 U.S.C. § 411(b)(2) requires the Court to consult "the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration," the Seventh Circuit has "strongly caution[ed] both courts and litigants to be wary of using this [consultation] device in the future." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013). To trigger the Court's consultation obligation, Vshinic must first "demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." *Id.*

While the Copyright Act does not define "published," it defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. The statute provides further

7

guidance: "The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." *Id.* However, as previously noted, the Register of Copyrights has counseled that, "[a]lthough it is not expressly stated in the statutory definition, the legislative history indicates that publication occurs only when copies or phonorecords are distributed by or with the authority of the copyright owner," *Compendium of the U.S. Copyright Office Practices* § 1902 (3d ed.). Here, JH alleges that factories stole her works and sold them without her authority. Accordingly, under the Register's guidance, JH did not publish her works. Vshinic, therefore, has not demonstrated that JH's registration application included inaccurate information, and the Court finds that it need not consult with the Register of Copyrights on this matter at this time.

II.     **Motion to Vacate the Preliminary Injunction**

The Court next turns to the motion to vacate the preliminary injunction. TROs and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must show: (1) it has some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if the court denies relief. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). If the moving party meets this threshold showing, the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* (citation omitted) (internal quotation marks omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the

preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Lab'ys v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364. Finally, the Court considers whether the injunction is in the public interest, which includes taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

Although the Court has already granted JH a preliminary injunction, it did so on an *ex parte* basis under circumstances that closely resembled a TRO, and without the benefit of adversarial briefing. Thus, JH bears the burden of persuading the Court that it should not disturb the injunction. *See Jiaxing Zichi Trade Co. v. Yang*, No. 21 C 973, 2021 WL 4498654, at *3 n.3 (N.D. Ill. Aug. 19, 2021) (citing 42 Am. Jur. 2d Injunctions § 291 ("[W]hen a temporary injunction is issued under circumstances resembling a temporary restraining order, the burden of proof may be on the party seeking the order.")). Vshinic contends that JH has not shown a likelihood of success on the merits of its copyright claim, irreparable harm, or balance of equities necessary for equitable relief. The Court addresses each argument in turn.

### A. Likelihood of Success

Vshinic only incorporates its arguments from its motion to dismiss for failure to state a claim to maintain that JH cannot prevail on the merits of her copyright infringement claim. However, for the reasons stated above, the Court finds that these arguments fail. Because

Vshinic did not present any other argument calling into question JH's previous assertions in support of a preliminary injunction, the Court maintains that JH is likely to succeed on the merits of her claim.

### B. Irreparable Harm

To maintain the preliminary injunction, JH also must show irreparable harm. Although in copyright cases the Supreme Court "made clear that there is no . . . presumption" of irreparable harm simply by showing the defendant infringed a copyrighted work, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), "it is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm," *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citing *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012)).

Vshinic argues that JH does not legally or factually support her alleged harm. It claims that JH cited patent and trademark, not copyright, cases to support her conclusion that Vshinic's alleged infringement causes consumer confusion. Vshinic further contends that JH failed to explain how Vshinic's alleged infringement has harmed her reputation, goodwill, or future business.

Vshinic correctly notes that courts typically consider consumer confusion as a harm associated with trademark infringement. *See, e.g.*, *Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 334 (N.D. Ill. 2020) (noting that courts consider consumer confusion to be irreparable in trademark infringement case). But this point is irrelevant because of the other irreparable harms alleged, including harm to her reputation, goodwill, and future business. And Vshinic's demand for conclusive proof that JH will certainly suffer other alleged irreparable harms asks too much of JH at the preliminary injunction stage. *See Winter v. Nat. Res. Def.*

10

*Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he . . . is *likely* to suffer irreparable harm[.]" (emphasis added)). Rather, it is enough for JH to "point[ ] towards potential harm to goodwill, reputation, brand confidence, potential lost market share, and relinquished control of nature and quality of germane products in connection with their copyright." *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022). In this case, JH has already submitted a declaration stating that she has been developing her works into "high quality marketable products" and the "inferior quality" of Defendants' products "has devalued and degraded" her works, making her business development plan more difficult and forcing her to postpone the commercialization of her works. Doc. 10 at 5. Although JH's business plans have not yet come to fruition, Vshinic has already sold at least $4,552.70 of an allegedly infringing product. *See* Doc. 118-1 ¶ 7. JH's concerns that Vshinic will make sales that should flow to JH instead if the Court does not prevent Vshinic from selling additional products are therefore well-founded.

Accordingly, the Court finds that JH is likely to face irreparable harm absent injunctive relief. *See Bevis*, 85 F.4th at 1188 (showing of irreparable harm is one of the two most important considerations for injunctive relief).

### C. Balance of Hardships and Equities

Finally, the Court considers whether the balance of hardships and equities justifies a preliminary injunction. First, Vshinic argues that the preliminary injunction's asset freeze and required delisting of its allegedly infringing products prevents it from engaging in normal operations, tipping the balance of hardships in its favor. While the Court acknowledges the preliminary injunction's adverse business effects on Vshinic, the company's continued sale of

products involving JH's copyright inflicts irreparable harm on JH's future business integrity and revenues. And a balancing of the parties' respective hardships reveals that the injunction means only that the Court enjoins Vshinic from conducting business that allegedly violates federal copyright law. *See CSC Holdings, Inc. v. Greenleaf Elecs., Inc.*, No. 99 C 7249, 2000 WL 715601, at *7 (N.D. Ill. June 2, 2000) (holding that the balance of hardships leans strongly towards the plaintiff's request for a preliminary injunction because the defendant's argued hardships stem from "conducting a business that is prohibited by federal law" and "[s]uch illegal activities are not worthy of any protection").

Vshinic also argues that the balance of equities weighs in its favor. The balance of equities "involves considering the public interest and effects of the preliminary injunction on 'people and institutions that are not parties to the case.'" *Madden v. Amazon Servs., LLC*, No. 23 C 14163, 2023 WL 8827977, at *10 (N.D. Ill. Dec. 21, 2023) (quoting *Cassel v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021)). Vshinic argues that the balance of public policies weighs in its favor because it "is not in the public's interest to allow a bad-faith copyright registrant from China to racketeer potential competitors from [her] country." Doc. 116 at 6. But, as discussed above, the Court is not convinced by Vshinic's argument that JH "fraudulently obtained copyright registrations." *Id.* And the public "has a strong interest in 'preserv[ing] the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights.'" *Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 966 F. Supp. 757, 764 (C.D. Ill. 1996) (alteration in original) (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982)).

Accordingly, the Court finds that the balance of hardships and equities justifies injunctive relief.

**CONCLUSION**

For the foregoing reasons, the Court denies Vshinic's motion to dismiss [110] and motion to vacate the preliminary injunction [114].

Dated: April 29, 2025

_____
SARA L. ELLIS
United States District Judge